## WILSON v. OWENS.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1898.)

No. 990.

1. STATUTE OF FRAUDS—INDIAN TERRITORY—LEASE OF LANDS.
   There was no statute of frauds in force in the Indian Territory until the act of May 2, 1890, extended to the territory certain laws of Arkansas; and a verbal contract for a seven-years lease of land, made prior thereto, was valid, and not affected by the adoption of the Arkansas statute.

2. INDIAN TERRITORY—LAWS OF INDIAN TRIBES.
   The United States courts do not take judicial notice of the local laws of the various tribes in the Indian Territory, but such laws are on the footing of local usages and customs, and must be pleaded and proven, where they are at variance with the laws which have been extended over the territory for the guidance of the United States courts.

3. APPEAL AND ERROR—LAWS OF INDIAN TRIBES—PLEADING.
   Where a law of the Chickasaw Nation, relied upon, was not pleaded or urged in the trial court, it cannot be set up in the territorial court of appeals, or in the circuit court of appeals.

In Error to the United States Court of Appeals in the Indian Territory.

This case comes on a writ of error from the United States court of appeals in the Indian Territory. It is a suit in ejectment brought by J. B. Wilson, the plaintiff in error, against Sol B. Owens, the defendant in error, to recover possession of certain lands situated in the Indian Territory. Judgment was rendered against the plaintiff below at nisi prius, and the judgment was affirmed by the court of appeals in the Indian Territory. Wilson v. Owens, 38 S. W. 976. It is conceded by counsel for the plaintiff in error that the following is a

correct statement of the character of the controversy: "The plaintiff, J. B. Wilson, a resident of the Chickasaw Nation, and a member of the Chickasaw tribe of Indians, entered into a verbal contract in the spring of 1888 with W. P. Kendall; the substance of the same being that Kendall was to put all the land in a certain valley in cultivation, erect a wire fence on oak posts, thirty feet apart, around said land (it being the land in controversy), and build thereon a certain house, of the value of $200, dig a well, and fit the place as a farm, for all of which the said Kendall was to have and enjoy the use and occupation of the place for the period of seven years from the spring of 1888. Afterwards, in 1889, the defendant, Sol B. Owens, purchased from said Kendall his contract with the plaintiff, Wilson, and impliedly obligated himself to fulfill the terms and obligations of the Wilson-Kendall contract. In 1889 the plaintiff, Wilson, entered into a further verbal contract with the defendant, Owens, for a valuable consideration, by the terms of which the defendant, Owens, was to have two years' occupancy of the place, in addition to the Wilson-Kendall contract. The plaintiff contends, and supports his contention with evidence, that the defendant has failed to place the improvements on the place, as per terms of the Wilson-Kendall contract, within seven years, and that by reason thereof the defendant has forfeited his contract, and that the plaintiff is entitled to the possession of the same; that in 1895, just after the expiration of the seven-years occupancy of the place, plaintiff made a written demand upon defendant for possession of the place, which demand for possession was refused, whereupon the plaintiff below brought the present suit."

J. W. Hocker and Zol J. Woods, for plaintiff in error.

B. D. Davidson and Dorset Carter, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Confining ourselves to the questions which are open for review on the present record, the first and most important inquiry is whether the plaintiff below was entitled to invoke the protection of the statute of frauds. It is claimed in behalf of the plaintiff that the contracts of rental upon which the defendant bases his right to possession were void, because they were verbal, and not to be performed within one year. We think that this contention was properly overruled by the territorial court of appeals. In the case of McClellan v. Pyeatt, 32 U. S. App. 104, 14 C. C. A. 140, 66 Fed. 844, this court held that the statute of 13 Eliz. c. 5, concerning fraudulent conveyances, was not in force in the Indian Territory until it was put in force by the act of congress of May 2, 1890 (26 Stat. 81, c. 181, § 31), which extended certain chapters of the Revised Statutes of Arkansas over the territory. The same must be true of the statute of frauds passed at a later date, during the reign of Charles II. (29 Car. II. c. 3). The latter statute did not go into effect in the Indian Territory until it was put in force by the act of congress aforesaid, and until that time there was no statute of frauds, applicable to the territory, of which the courts of the United States can take judicial notice. In the case of Pyeatt v. Powell, 10 U. S. App. 200, 2 C. C. A. 367, 51 Fed. 551, this court decided that while the common law could not be presumed to exist in the Indian Territory on March 1, 1889, when congress created a United States court for the territory, and gave it jurisdiction of a certain class of controversies (25 Stat. 783, c. 333), yet that, such court having been created by an act of congress, it would be inferred that congress in-

tended that said court should apply the rules and principles of the common law to the adjudication of such cases as came before it, especially when there was no proof of any local law, custom, or usage, in the light of which the rights of the parties ought to be adjudicated. This conclusion was based upon the ground that in the federal courts the common law furnishes the rule of decision, in the absence of any statute repealing or modifying it. The phrase "common law," as used in the case of Pyeatt v. Powell, 10 U. S. App. 200, 2 C. C. A. 367, 51 Fed. 551, was intended to signify those rules and principles of the common law not embodied in the provisions of any statute, which are termed the "lex non scripta." Whart. Law Dict. 161; 1 Bl. Comm. 35. It is manifest from our subsequent decision in McClellan v. Pyeatt, 32 U. S. App. 104, 14 C. C. A. 140, 66 Fed. 844, holding that the statute of fraudulent conveyances did not become operative in the Indian Territory until May 2, 1890, that the phrase "common law," as employed in Pyeatt v. Powell, was not used in a sense which would embrace the statute of frauds, and make that statute operative in the Indian Territory, as a part of the law of the forum. The result is that, inasmuch as the oral leases in question were made prior to the extension of the statute of frauds over the Indian Territory, they were valid when made, and were not affected by the subsequent adoption of the statute in that territory.

Another contention of counsel for the plaintiff in error is that a law of the Chickasaw Nation declares such leases as those involved in the present case to be absolutely null and void, and that in accordance with such law the leases should have been pronounced void. This contention was overruled by the court of appeals in the Indian Territory for the reason that the point was not made or urged in the trial court. An inspection of the record discloses the fact that the local statute in question was not pleaded by the plaintiff, nor offered in evidence, to avoid the effect of the leases. Neither was the trial court asked to take judicial notice of the same, by an instruction directing a verdict for the plaintiff because of the existence of the local statute. It is urged in this court, however, that the trial court, and the court of appeals as well, should have taken judicial notice of the local law, of their own motion, and should have directed a verdict for the plaintiff, although the plaintiff did not insist upon such action. We cannot assent to this view. We are of opinion that the territorial court of appeals took a correct view of this question. There are a number of tribes domiciled in the Indian Territory, which have different laws, customs, and usages. This court does not have convenient access to books, local decisions, or official documents which would enable it to determine with certainty what are the laws of these tribes on various subjects; and we apprehend that the United States courts sitting in the Indian Territory are confronted, in a measure, at least, with the same difficulty. Any attempt, therefore, to take judicial notice of the local laws of the various tribes in that territory would be attended with doubt and difficulty, and would lead to error. We think that it is wiser to place such laws on the footing of local usages and customs, and to require them to be pleaded and proven by litigants who rely upon them for protection, if they are at variance

with the code of municipal law which has been extended over the Indian Territory for the guidance of the United States courts sitting therein. We are of opinion that this view, if acted upon, will, in the great majority of cases, lead to a more correct and just administration of the law.

The territorial court of appeals, when it reached the merits of the controversy, decided, in substance, that even though Owens, the lessee, had not fully complied with all the provisions of his contract relative to making improvements upon the demised premises, yet, as the landlord or lessor had not reserved the right to forfeit the lease for a failure to make each and all of the improvements specified, such right of forfeiture or rescission could not be exercised when there had been such a part performance by the lessee of the covenants of the lease as was shown by the evidence in the case at bar. It accordingly held that, for the breach of the contract complained of, the plaintiff was not entitled to declare the lease forfeited, and sue in ejectment for the recovery of the demised premises, but that his sole remedy for the alleged breach was by an action at law for damages. It further decided, on this ground, that the trial court might very properly have directed a verdict for the defendant, without submitting any issue to the jury. 38 S. W. 976, 979. Inasmuch as this view of the law is not challenged in the brief of counsel for the plaintiff in error, nor by the assignment of errors, it is not necessary to consider the case at greater length, or to notice some other points which have been discussed. We have no doubt, as the territorial court of appeals held, that there had been such a part performance of the stipulations of the lease by the lessee as rendered it impossible for the plaintiff below to declare a forfeiture, and maintain a suit in ejectment. The judgment of the United States court of appeals in the Indian Territory, and the judgment of the United States court for the Southern district of the Indian Territory, are therefore affirmed.