## ELLIS vs FITZPATRICK.

Opinion delivered October 4, 1901.

*1. Landlord and Tenant—Unlawful Detainer—Complaint.*

In an action of unlawful detainer against a tenant holding over after the termination of the lease, a complaint which avers these facts and a demand for the possession of the premises not complied with by defendant, is sufficient, without alleging the ownership of improvements on the premises by plaintiff.

*2. Unlawful Detainer—Non-Payment of Rent.*

A demurrer to a complaint in unlawful detainer charging non-payment of rent by the tenant, based upon the claim that such an action is prohibited by law, cannot be sustained, as there is no such law in the Indian Territory.

*3. Unlawful Detainer—Damages—Accrued Rent.*

Mansf. Dig. Sec. 3362 (Ind. T. Stat. Sec. 2296) expressly authorizes the recovery of rents accrued before the institution of suit, in actions of unlawful detainer; and hence a complaint seeking to recover such rents is not defective and subject to demurrer upon that ground.

*4. Change of Venue—Must be Without Condition.*

A change of venue, properly applied for, goes as a matter of right, and the court can impose no condition upon the applicant before the change becomes effective.

*5. Change of Venue—Waiver of Right.*

When a change of venue is granted upon conditions, not authorized by law, the applicant by proceeding to trial, at a subsequent term without objection, waives his right to the change.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by Theo. Fitzpatrick against J. P. Ellis. Judgment in favor of plaintiff. Defendant appeals. Affirmed.

This is an action of unlawful detainer brought on the 7th day of July, 1898, for the possession of lot No. 3 in block No. 46, situated in the town of Chickasaw, in the Indian Territory. The amended complaint, upon which the case was tried, alleged an express rental contract between the parties, running from month to month; that appellant had failed to pay rent when due, and was at the time of the institution of the suit indebted to appellee in the sum of $150, and, although demand in writing had been made for the possession of the premises, it had been refused; and that appellant unlawfully detained the possession of the said premises. Appellee further pleaded the townsite provision contained in the Atoka agreement, alleging that unless he be allowed to take possession of the premises and go on the

(43)

unimproved part, and be allowed to erect permanent and substantial improvements thereon, he would lose his right and title to said lot, and prayed for an injunction, which was refused by the court. On October 5, 1898, appellant filed a demurrer to the amended complaint, which was afterwards overruled by the court; and on the 10th day of October, 1899, he filed a motion for change of venue. On the following day, the 11th, the motion for change of venue was heard by the court, and an order granting the change was made, with the condition, however, that the change should not be granted unless the defendant should file a new bond within 30 days of the date of the order. On the 20th day of October, 1899, the appellant filed his answer. Just one year thereafter, October 20, 1900, the case was called for trial; and the appellant, while still insisting upon his demurrer, announced himself ready for trial, and, without calling the attention of the court to the condition of the case relating to the change of venue, or in any wise insisting on his rights by virtue thereof, went to trial without any objection on that account. The verdict of the jury was for the plaintiff, the appellee. A motion for a new trial, in which no mention is made of the petition for change of venue or the record pertaining to the same, was filed and overruled, and the cause regularly appealed to this court.

*Davidson & Riddle*, for appellant.

*Beavers & Sayer*, for appellee.

CLAYTON, J.   There are five specifications of error in appellant's assignment, but the grounds upon which error is assigned in all of them are embraced in the first two, to wit: "First, in overruling appellant's demurrer to appellee's complaint; second, in overruling appellant's motion for a change of venue, and in refusing to make an order absolute granting said change of venue." The demurrer is as follows: "Now comes the defendant in the above cause, and demurs

to plaintiff's complaint, and says that the same is insufficient in law. And for special demurrer defendants say said complaint is defective: (1) In that complaint nowhere alleged that plaintiff had at the time or prior to the institution of this suit any improvements on said lot or ground, and that the same were permanent and substantial, as required by law. (2) Said complaint is defective because it alleges as a cause for bringing this suit of unlawful detainer that defendant refused to pay rent to plaintiff, which act is specially prohibited by law. (3) Said complaint is defective because it set up and seeks to recover rents alleged to have accrued before the filing of said complaint. Wherefore they pray judgment of the court," etc.

As to the first paragraph of the demurrer, we know of no law which permits a tenant to deny the title of his landlord, under whom he entered, because of the fact that there were no valuable improvements on the leased premises. It is true that under the Atoka agreement a claimant to a town lot, before he can become the owner of it, must have upon it valuable and lasting improvements; but before he can put the improvements upon it he must have obtained possession of it, and in this case one of the purposes for which the plaintiff brought his suit against his delinquent tenant, as alleged in his complaint, was that he might avail himself of the benefits of the Atoka agreement, by placing improvements upon the lot, and thus enable himself to become its absolute owner. Besides, the tenant in this case, after obtaining possession of the lot under the lease, put upon it valuable and lasting improvements, which, as between the parties to the lease, inured to the benefit of the landlord. It may have been that the very object of the landlord in leasing the lot was to have it improved by his tenant, so that he might be able, under the peculiar conditions that existed here, to hold it as against every title except that of the Indian nation. Whether this was the intention or not, in

law it had that effect. The possession of the tenant is that of his landlord. There is no merit in the position taken by appellant's counsel that the Atoka agreement annulled and abrogated the validity of the leases between white men of town lots in the Choctaw and Chickasaw Nations. On the contrary, if it had any effect on this class of contracts at all, it was to validate them. It is by the agreement alone that we find statutory authority for white men to hold town lots in these nations; and when the agreement was entered into, recognizing the validity of these holdings, and providing a method for transferring title, all objections to the invalidity of contracts between white men in relation to the possession of these lots were overcome. It mattered not to the Indian who made the improvement or was entitled to buy the lots; and, as to the white man, the possession of the tenant was that of the landlord, and he could not deny his title to the premises, whether improved or not. The complaint alleges possession in the plaintiff at the time of the execution of the lease, a lease of the premises to the defendant, an entry by the defendant under the lease, a termination of the lease, and a refusal to surrender possession of the premises after demand. And ordinarily this is all that is required. The rule is that a tenant cannot deny his landlord's title, although he (the landlord) may have none; nor is it necessary that the landlord, at the time of the execution of the lease, should have been in possession. It is sufficient if the tenant entered peaceably under the lease and paid rent. 1 Wood, Landl. & Ten. § 231. The question involved under the first paragraph of the demurrer has been decided adversely to the appellant's contention by this court in the cases of Kelly vs Johnson, 1 Ind. T. 184, (39 S. W. 352,) and Walker Trading Co. vs Grady Trading Co., 1 Ind. T. 191, (39 S. W. 354.) And we adhere to those decisions.

The second paragraph of the demurrer, to the effect that the complaint is defective because it alleges as a cause

for bringing the suit an act prohibited by law, does not state a defect in the complaint. We know of no law which prohibits one man from paying rent to another upon a town lot in the Indlan Territory, and none has been pointed out to us by appellant's brief. If we concede (and we do not) that the Chickasaw law prohibited it, the Chickasaw law had not been pleaded, and was therefore not before the court. The circuit court of appeals for the Eighth circuit, in the case of Wilson vs Owens, 30 C. C. A. 257, 86 Fed. 571, have held that the United States courts in the Indian Territory cannot take judicial notice of the laws of the Indian nations. They must be pleaded. But, had they been pleaded, they would have availed the plaintiff nothing. This court, in the case of Walker Trading Co. vs Grady Trading Co., supra, say: "The contention of the appellant that the contract was in violation of the law of the Choctaw Nation is untenable. Neither plaintiff nor defendants were citizens of the Choctaw Nation, and no law of that nation will apply to them, or control the property which they might hold. A contract of rental, by a citizen of the United States, of lands or lots in the Indian Territory, is valid to all intents and purposes, where all the requisites of a valid contract are complied with; and a person who enters into a contract to lease such improvements cannot question his landlord's title, and is subject to the statute in force in the Indian Territory, for the purpose of obtaining possession of such premises by an action of unlawful detainer, the same as if the property were located in any of the states of the Union, under a similar law." The parties to this suit are both white men. But appellant, in his brief, further contends that the "nonpayment of rent is no ground for the institution of a suit of unlawful detainer, unless it is provided in the contract that the tenant shall surrender on failure to pay rent," and cites Buckner vs Warren, 41 Ark. 532. In this case it was decided that, "where the term had not ended, the mere non payment of

rent did not forfeit the contract, unless so provided in the lease, and was not ground sufficient to sustain unlawful detainer." But the court further held that if the tenant expressly repudiates the obligations of the lease, and by words and equivalent acts declares that he will not perform them, the landlord may treat the lease as rescinded and regain possession by unlawful detainer. In this case the lease, to use the very language of the complaint, was "to have and hold the said premises to the defendant for the term of one month, and from month to month thereafter, until terminated at the option of either party, or by failure of said lessee to pay rent therefor, according to the terms of said lease, at the monthly rental of five dollars per month, payable monthly in advance." The very terms of this lease forfeit the contract if the rents are not paid as provided in the lease. Besides, the term of the lease was one month; afterwards, at the option of the parties. Long after the first month had elapsed, and after many months' refusal to pay rent due, a demand for possession was made by appellee, thus, even if rents had been paid, terminating the lease; and all these facts are set out in the complaint and therefore the demurrer in this particular is wholly without merit.

The third paragraph of the demurrer, "that the complaint is defective because it is set up and seeks to recover rents alleged to have accrued before the filing of the complaint," is fully answered by section 3362, Mansf. Dig. (Ind. T. Ann. St. 1899, § 2296,) which is as follows: "In all cases of * * * unlawful detainer, when the defendant gives bond to retain possession of the lands and premises mentioned in the writ and declaration in the cause as provided by law, it shall be lawful for the plaintiff to introduce before the jury trying the main issue in such action evidence showing the damage he may have sustained in being kept out of possession of said lands and premises, and the

jury, if they find the issue for the plaintiff, shall at the same time, assess what damages, if any, the plaintiff has sustained in being kept out of possession by the defendant and the court shall render judgment restoring the property to the plaintiff, as now prescribed by law, and shall also render judgment against the defendant and his security in the bond for damages as found by the jury, as well as the cost of suit." We find that the court below committed no error in overruling the demurrer.

The only other question presented to us for consid-eration in this case is, did the court below err in attaching a condition to its order granting a change of venue? The order is as follows: "At this time came on for hearing this cause on the motion heretofore filed by the defendant for a change of venue, and the court having heard the same, and the objection of the plaintiff herein, who files in open court three affidavits showing the insufficiency of the bond heretofore given by the defendant, and the court being fully advised in the premises, it is ordered by the court that the defendant herein, J. P. Ellis, within thirty days give a good and sufficient bond in the sum of one thousand dollars, and the clerk of the court being satisfied as to the sufficiency of the said bond, then, and upon that condition being fulfilled, that the motion of defendant be sustained, and this cause be be transferred to Wewoka, in the Northern district of the Indian Territory, for trial." It is the law of this jurisdiction that a change of venue, when properly applied for, goes as a matter of right, and that in such cases the only question open to the court is the credibility of the support-ing witnesses, and therefore the court had no power to pre-scribe conditions not named in the statute. Jackson v. State, 54 Ark. 243, 15 S W. 607. While the court had ample power to require the new bond to be filed by the defendant, the penalty for a failure to do so was not that the defendant should be compelled to go to trial before a

jury drawn from a community so prejudiced against him as that they would not give him a fair trial. But the trial was not had until a year had elapsed since the order had been made, and, when the defendant was called upon to answer if he were ready for trial, without calling the court's attention to the condition of the petition for a change of venue, or making any objection to going to trial because of that, he announced ready, and afterwards, in his motion for a new trial, no mention of or objection to it was made. We hold that under such circumstances the defendant waived his right for a change of venue, and therefore the error of the court was not prejudicial to him. Let the judgment of the court below be affirmed.

GILL and RAYMOND, JJ., concur.